IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMIE C. BISKER,
    Plaintiff

vs. : CIVIL NO. 1:CV-07-1465

GGS INFORMATION SERVICES, INC.,
    Defendant

*M E M O R A N D U M*

I.    *Introduction*

Plaintiff Jamie C. Bisker ("Bisker") filed this action against her employer, GGS Information Services, Inc. ("GGS"), claiming violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* She specifically alleges claims of failure to accommodate, disparate treatment and failure to engage in the interactive process. We now consider the parties' cross-motions for summary judgment.

We will examine the motion under the well-established standard. *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d. Cir. 2008). "The rule is no different where there are cross-motions for summary judgment." *Id.* Upon careful review of the briefs and the record, we will deny both motions.

II.    *Background*

We see no reason to set forth a detailed factual background as the facts were addressed in our earlier decision, *Bisker v. GGS Info. Servs., Inc.,* No. 07-1465, 2008 WL 4372927 (M.D. Pa. Sept. 22, 2008), and in the Third Circuit's opinion vacating and remanding our prior determination, *Bisker v. GGS Info. Servs., Inc.,*

342F.App'x 791 (3d Cir. 2009). Any further, relevant facts will be discussed as necessary.

*III.     Discussion[1]*

   *A.   American's with Disabilities Act*

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Disability means, "with respect to an individual-(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

"In order to make out a prima facie case of disability discrimination under the ADA, [plaintiff] must establish that she (1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an adverse employment action because of that disability." *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 611 (3d Cir. 2006). "Adverse employment decisions...include refusing to make reasonable accommodations for a plaintiff's disabilities." *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 761 (3d Cir. 2004)(quoted cases omitted). Here, GGS does not contest that Bisker has a disability under the ADA. GGS contends that no

---

[1] We note that the PHRA and the ADA are "basically the same." *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002) "'Pennsylvania courts . . . generally interpret the PHRA in accord with its federal counterparts.'" *Id.* (quoting *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)); *see also Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 761 n.6 (3d Cir. 2004)(the analysis of an ADA claim applies equally to a PHRA claim). Thus, our analysis of an ADA claim applies to a PHRA claim.

reasonable accommodations existed and that plaintiff is not a qualified individual because she cannot perform the essential functions of her job with or without reasonable accommodations.  Thus, the critical issue is whether Bisker has presented sufficient evidence creating a triable issue on whether she could, with reasonable accommodations, perform the essential functions of her job by working from home.

### 1.  Qualified Individual

A qualified individual "means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  "The EEOC regulations divide this inquiry into two parts: (1) whether the individual has the requisite skill, experience, education and other job-related requirements of the position sought, and (2) whether the individual, with or without reasonable accommodation, can perform the essential functions of that position." *Turner*, 440 F.3d at 611 (citing 29 C.F.R. § 1630.2(n)). On the second part of the inquiry, "[w]hether a job duty is an 'essential function' turns on whether it is 'fundamental' to the employment position," *id.* at 612. (citing 29 C.F.R. § 1630.2(n)(1)), and it is a factual determination made on a case by case basis.  *Id.*[2]  "The determination of whether an individual with a disability is qualified is made at the time of the employment decision, and not at the time of the lawsuit." *Id.* at 611.

---

[2] The Third Circuit, citing 29 C.F.R. § 1630.2(n)(2) and (n)(3), considered certain factors and evidence in determining what is an essential job function.  In part, those are: (1) the reason the position exists is to perform that function; (2) the limited number of employees available to perform that function; (3) the function may be so highly specialized the plaintiff had been hired to perform that function; (4) the amount of time spent on the job performing the function; and (5) the consequences of not requiring the plaintiff to perform the function. *Turner*, 440 F.3d at 612.

3

### 2. Reasonable Accommodations

The ADA provides that an employer discriminates against a qualified individual when the employer does "not make reasonable accommodations to the known physical or mental limitations of the individual unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer." *Taylor v. Phoenixville School District*, 184 F.3d 296, 306 (3d Cir. 1999)(quoting 42 U.S.C. § 12112(b)(5)(A). Reasonable accommodations are "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that job." 29 C.F.R. § 1630.2(*o*)(1)(ii). An undue hardship involves "significant difficulty or expense in, or resulting from, the provision of the accommodation." *Walton v. Mental Health Ass'n of Southeastern Pennsylvania*, 168 F.3d 661, 670 (3d Cir. 1999)(quoting 29 C.F.R. § 1630, App. § 1630.2(p)).

In *Walton*, the Third Circuit adopted a "middle course" on the burdens of production and persuasion on the issues of reasonable accommodation and undue hardship. First, the plaintiff bears the burden of proving that "she is otherwise qualified; if an accommodation is needed, the plaintiff must show, as part of her burden of persuasion, that an effective accommodation exists that would render her otherwise qualified." *Walton*, 168 F.3d at 670. As for a reasonable accommodation, the plaintiff bears only the burden of "identifying an accommodation, the costs of which, facially, do not clearly exceeds its benefits." *Id.* Once the plaintiff has met this requirement, the burden shifts to the defendant "to prove either that the accommodation is unreasonable or that it creates an undue hardship for the defendant." *Id.* In light of these requirements, a district court may grant summary

judgment for a defendant in cases where a plaintiff's proposal is "either clearly ineffective or outlandishly costly."  *Id.*[3]

### B. Bisker's Accommodation Claim

Bisker claims GGS discriminated against her when it denied her request to work from home.  It is not in dispute (for purposes of this motion only) that Bisker can show that she is disabled and that GGS's denial of her request on August 15, 2006 constituted an adverse employment action.[4]  GGS argues, however, that Bisker is not qualified to perform the essential functions of her job by working from home.  It contends that "[p]ermitting an employee to work from home simply because the employee wants to is not a reasonable accommodation."  (doc. 76 at 17.)  Specifically, GGS claims Bisker's essential job functions required her to meet "tight deadlines and [have] close interaction" with certain co-workers.  (doc. 76 at 16.)   In addition, GGS argues that plaintiff failed to show  she could work from her computer in the GGS's offices "7 hours a day, with breaks every 2 hours."  (doc. 76 at 16.)  Plaintiff counters

---

[3] Plaintiff also alleges a claim of failure to engage in the interactive process.  To prove this Bisker must show:  1) GGS knew about her disability; 2) she requested accommodations or assistance for her disability; 3) GGS did not make a good faith effort to assist her in seeking accommodations; and 4) she could have been reasonably accommodated but for GGS's lack of good faith.  *Taylor*, 184 F.3d at 319-20.  A failure to engage in the interactive process however is not a separate claim apart from the failure to accommodate claim.  *See Whelan v. Teledyne*, 226 F.App'x 141, 147 (3d Cir. 2007)(nonprecedential).  "Neither the ADA nor the implementing regulations mandate a particular method of gathering information."  *Id.*  The law requires that GGS solicit information from Bisker that will aid it in understanding her limitations.  *Id.*  "Even when an employer fails to participate in the interactive process in good faith, it may escape liability by showing that no reasonable accommodation was possible."  *Id.* (citing *Taylor*, 184 F.3d at 319.  Therefore, GGS's alleged failure to participate in the interactive process is not a ground for liability unless Bisker proves a failure to accommodate, specifically, that a reasonable accommodation existed and the GGS failed to provide it.  *See Whelan*, 226 F.App'x at 147.

[4] Neither Bisker nor GGS offered a date when an adverse employment decision occurred.  The record, however, indicates that on August 15, 2006 GGS denied plaintiff's accommodation request.  As mentioned previously, adverse employment decisions include refusing to make reasonable accommodations.  Thus, for purposes of this motion, we will presume that said date is the date plaintiff suffered an adverse employment decision.

asserting that attendance and face-to-face interaction with fellow employees was not an essential function of her job. She claims that "[a]ttendance was not one of the job functions and never appeared in any of the employer's job descriptions...[and] lack of physical attendance did not become an issue until it was raised in...Oberdick's letter to Dr. Rae-Grant." (doc. 73 at 14.) Thus, our inquiry is whether the requirements that Bisker meet tight deadlines, be able to interact with her coworkers, be in attendance in defendant's office for "7 hours a day, with [a] break every 2 hours" and, finally, perform her work within the normal five-day workweek, are "essential functions" of her Parts Lister position.

Essentially, GGS argues that it is per se unreasonable for employees who are expected to interact with others in order to meet tight deadlines to work from home. It principally relies on the Seventh Circuit case of *Vande Zande v. State of Wisconsin Dept. of Admin.,* 44 F.3d 538, 544-45 (7th Cir. 1995), where the court of appeals held that "[g]enerally, an employer is not required to accommodate a disability by allowing the disabled worker to work, by himself, without supervision, at home." However, following the position of Judge Kane in *Kiburz v. England*, No. 04-2247, 2008 WL 2780650 (M.D. Pa. July 16, 2008), we decline to adopt such a per se rule. Bisker has provided an accommodation that, on its face, is not exceedingly costly. In fact, Patrick Carlton's conclusion, after conducting a feasibility test, that it would neither be costly nor difficult to replicate plaintiff's computer from home demonstrates the possible merit of Bisker's proposal. In addition, her medical expert, Dr. Rae-Grant, has indicated that it may be possible for plaintiff to perform her job functions from home. (doc. 81, Ex. N at 85-86). Thus, we conclude that Bisker has met her burden demonstrating an accommodation that is not facially unreasonable. We also conclude

that GGS has failed to meet its burden of demonstrating that the proposed accommodation is unreasonable or imposes an undue hardship on its business.

Similarly, we agree with Bisker that, based on the record, there is a factual dispute on whether attendance, a normal five-day work week and face-to-face interaction with fellow employees was an essential function of her job. In support, Bisker submitted GGS's job description for the Parts Lister position. The job description indicates that one of the primary duties of a Parts Lister is to "[o]ccasionally [interface] with engineers and technicians," and, under the job specifications prong, "frequent contact with employees within the division." (doc. 81-2, Dep. Ex. 4.) However, the description does not specify that face-to-face interaction is either necessary or imperative as argued by defendant. Indeed, a letter sent to plaintiff and the deposition testimony of Carlton support Bisker's contention that it was only after she was on leave from GGS that her job description changed, requiring more face-to-face interaction and the necessity of completing the work within a five-day work week. (*See* doc. 81-2 and 81, Ex. J.) Furthermore, Carlton's testimony, which indicates at least one other Parts Lister working an entirely different shift than Bisker, also tends to rebut GGS's assertion that Bisker's work must be completed in a seven hour period. (doc. 81, Ex. J.) In light of these facts, we conclude that Bisker has created a dispute of material fact as to the question of the essential functions of the Parts Lister position.

*IV. Conclusion*

For the foregoing reasons, we conclude that genuine issues of material fact exist on plaintiff's claims, and, therefore, GGS and Bisker are not entitled to summary judgment. This case will proceed to trial.

We will issue an appropriate order.

                                        <u>/s/William W. Caldwell</u>
                                        William W. Caldwell
                                        United States District Judge

Date: June 2, 2010

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMIE C. BISKER,  :
    Plaintiff
        :

vs.  : CIVIL NO. 1:CV-07-1465
        :

GGS INFORMATION SERVICES, INC.,
    Defendant  :

*O R D E R*

AND NOW, this 2nd day of June, 2010, upon consideration of the parties' cross-motions for summary judgment (docs. 70 & 75), and pursuant to the accompanying Memorandum, it is ordered that both motions are denied. Trial will proceed on plaintiff's failure to accommodate and disparate treatment claims pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.*

                                        /s/William W. Caldwell
                                        William W. Caldwell
                                        United States District Judge